Caldwell, J.
This is a writ of error to the district court of Hamilton county. The original proceeding was an action on the *208 case, brought by the defendant in error, William Naylor, against the railroad company, for damage, which he alleged had been done to a house and lot belonging to him, in the town of Fulton, on account of the company having changed the location of their road. The defendant pleaded not guilty, and the cause was submitted to a jury, who found a verdict for the plaintiff, on wdiich judgment was rendered.
From the bill of exceptions, it appears that it was proved on the-trial that the railroad company had located their road on a public street, in the town of Fulton, about sixty feet wide, which was-also used by the Cincinnati, Columbus and Wooster Turnpike Company; that, in 1848, the railroad company changed their track and located the road off the street, merely using the street for the purpose of passing from the south to the north side thereof. In thus crossing the street the track ran within a few feet of the premises of Naylor. In the opinion of the witnesses, the property was much injured by the relocation of the road; the house, which was a three-story frame house, and which was used *as a. grocery and dwelling, was, in their opinion, ruined as a grocery stand, and its value much impaired as a dwelling. On the trial, the court were asked to charge several distinct propositions, which wore refused by the court, the substance of which is, that the railroad company by their charter have the right to use this street for the purpose of laying their track; that they had a right to change the track on the street, and would not be liable in an action for such change, if the road as relocated did not touch the property of the-plaintiff.
The court, on the contrary, charged the jury, substantially, that the defendants having located their road, could not without express authority, legally change the location on the street, and if by such unauthorized location the property of the plaintiff was damaged,, he would have a right to recover from the company for such damage, although the track of the road did not pass over his property.
In thus ruling, it is said, the court of common pleas erred.
The first question which we propose to consider is, whether the railroad company had a right to change the location of their road on this street.
The charter of the Little Miami Railroad Company, like most charters of the kind, merely fixes a few points through which the road is to pass, from its commencement to its terminus, leaving thu *209 location of the road between the points specified to the discretion of the corporation. The location of a railroad through a settled country will always produce a great change in the use of the property along its track. Improvements are made in reference to the track as located. To change the track, in many instances, will produce as great damage to property, as the making of a new road. The strip of country from which the road may select its track, is frequently several miles in width. This extent of country is not all ajjpropriated to the use of the road, but only so much as may be necessary for a track; its right to it is simply one of selection, and when it has made its selection *its rights over all the other territory ceases. This principle is distinctly decided in the-case of Morehead v. The Little Miami Railroad Company. It was there held that the railroad company having once located the road, their power to relocate, and for that purpose to appropriate the property of an individual, had ceased. It is said, however, that the present case differs from the ease of Moorehead v. The Little-Miami Railroad, in this, 'that that was the case of an attempt to relocate on the property of an individual, whereas the present is-merely using a street or highway for that purpose. We do not think there is any difference in principle between the two cases. The railroad company had no right to use the street at all, except by the permission of the legislature; the grant to use the street, for a track did not give them the property in it to the exclusion of the public; they could only lay their track and run it, doing as little damage to the road, as a highway for general travel, as possible. The property bounding on it would be used and improved in reference to the railroad as located, which every person interested would be authorized in supposing to be permanently fixed. In a town,the free ingress and egress to the street are indispensable to the use of the property fronting on it.
Section 12 of the charter of the' company provides, that, “Whenever it shall be necessary for the construction of the railroad, to intersect or cross any stream of water or water-course, or any road or highway, lying in or across the route of said road, it shall be lawful for the corporation to construct the said railway across or upon the same; but the corporation shall restore the stream, or water-course, or road, or highway, thus intersected, to-its former state, or in a sufficient manner not to impair its usefulness ; and if said corporation, after having selected a route for said *210 railway, find any obstacle to continuing 'said location, either by the «difficulty of construction, or procuring right of way at reasonable ■cost, or whenever a better and cheaper route can be had, it shall .have authority to vary the route, and change the location.” The first part of this section of the charter *shows clearly that where the company construct their road along a public thoroughfare, they do not thereby obtain an absolute control over such thoroughfare, but the rights of the public over the same are still, as far as may be, preserved. The latter part of the section is very pertinent on the subject of location. It gives the company the right to change the selected location; but from the state of case provided for (where the route selected is difficult of construction, there is difficulty in procuring the right of way, etc.), it is evident that the change of location provided for is before the road is made, and is in fact only a change of selection. If it were thought necessary, by the legislature, to give express authority to change the location before the road was made, much more would it be necessary to give express power to change after the road had been finished. We are of opinion, then, that the Superior Court of Oin•cinnati did not err in charging the jury, that the railroad company, having once made their road on this road or street, had' not the right to change its location.
The act of the railroad company in changing their location being unlawful, the next question arises, whether they are liable to the .defendant in error for the damage which he has sustained by such relocation? It is contended that inasmuch as the road, as relocated, does not touch his property, the company can not be made liable. It is a general principle of law, that a person is liable for ,all the damage done by his illegal act, and this whether the injury was intended or not. It is well settled that an action lies as well for damage to adjoining property, by stopping or impeding the "travel on, to, or from, a street or highway, as any other damage •that can be done to property, although the property injured may not be touched by the obstruction. See 25 Wend. 462; 9 Ohio, 178; 5 Eng. Law & Eq. 339; 29 Com. Law, 336.
We are of opinion, from an examination of the whole case, that the rulings of the Superior Court of Cincinnati are in *accord.ance with law, and that the district court, in affirming its judgment, decided correctly. The judgment of the district court will •.therefore be affirmed.